> Not For Publication

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                              )
IN RE:                                        )      CASE NO.          05-32195 (LMW)
                                              )
ROBERT A. GILSON, JR. AND                     )      CHAPTER           7
ROBERTA M. GILSON,                            )
                                              )
          DEBTORS.                            )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CONNECTICUT COMMUNITY                         )
INVESTMENT CORP.,                             )      ADV. PRO. NO.     05-3137 (LMW)
                                              )
          PLAINTIFF                           )      DOC. I.D. NO.     1, 11
                                              )
     vs.                                      )
                                              )
ROBERT A. GILSON, JR. AND                     )
ROBERTA M. GILSON,                            )
                                              )
          DEFENDANTS.                         )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### APPEARANCES

Peter G. Kruzynski, Esq.                      Attorney for Plaintiff
Jennifer L. Schancupp, Esq.
Susman, Duffy & Segaloff, P.C.
55 Whitney Avenue
P.O. Box 1684
New Haven, CT 06507


Robert A. Gilson & Roberta M. Gilson          Debtors, *Pro Se*
165 Main Street, 2nd Floor
West Haven, CT 06516

### <u>MEMORANDUM OF DECISION</u>

Lorraine Murphy Weil, United States Bankruptcy Judge

The matter before the court is the above-referenced plaintiff's (the "Plaintiff") complaint (A.P. Doc. I.D. No. 1, the "Complaint")[1] against both of the above-referenced debtors (the "Debtors") seeking a determination that a certain debt (the "Debt") in the amount of $28,000.00 plus interest was not discharged in this chapter 7 case pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B) and/or 523(a)(6). This matter is a core proceeding within the purview of 28 U.S.C. § 157(b). The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and that certain order dated September 21, 1984 of the District Court (Daly, C.J.).[2]

## I.    PROCEDURAL BACKGROUND

On April 24, 2006, this court issued a certain Memorandum of Partial Decision and Order (A.P. Doc. I.D. No. 15, the "Prior Decision") with respect to a motion for default judgment. Familiarity with the Prior Decision is assumed herein.[3] The "Conclusion" of the Prior Decision read in relevant part:

> For the reasons stated above, the court concludes that the Plaintiff has established a prima facie case under Section 523(a)(6) but the Debt can be excepted from discharge only with respect to Mr. Gilson and only to the extent that the Plaintiff can prove the value of its interest in the converted Collateral at the time of the conversion. The remainder of the motion is denied and the Third Count is dismissed. The court will issue a notice of further hearing to allow the Plaintiff to submit, if it chooses, any further evidence which it believes proves the amount of its nondischargeable debt under Section 523(a)(6).

---

[1]    Citations herein to the docket of this adversary proceeding appear in the following form: "A.P. Doc. I.D. No. ___."

[2]    That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C. . . . ."

[3]    All capitalized terms used but not defined herein have the meanings ascribed to the same in the Prior Decision.

Additionally, the court denies the Plaintiff's claim for reasonable legal fees, as the Plaintiff . . . failed to properly plead that claim. Any claim for statutory costs is premature as the Plaintiff has not yet prevailed.

(Prior Decision at 18.)  On November 27, 2006, this court issued a certain Order Clarifying Memorandum of Partial Decision and Rescheduling Trial (A.P. Doc. I.D. No. 45, the "Clarifying Order").  The Clarifying Order provided in relevant part:

> **NOW, THEREFORE,** it hereby is **ORDERED** that the last sentence of the first paragraph of the last page of the [Prior] Decision is deleted and replaced with the following sentence:
>
> > The court will schedule a trial to allow the Plaintiff to submit, if it chooses (a) any  evidence which it believes proves the amount of its nondischargeable debt under Section 523(a)(6) and/or (b) any evidence which the Plaintiff believes proves a nondischargeable debt under Section 523(a)(2)(A).
>
> ; and it is further
>
> **ORDERED** that the Trial is rescheduled to January 22, 2007 at 10:00 a.m. at the United States Bankruptcy Court, Connecticut Financial Center, 157 Church Street, 17th floor, New Haven, Connecticut . . . .

(Clarifying Order at 2.)

The Trial went forth as scheduled on January 22, 2007.[4]  Although properly noticed with respect to the Trial, the Debtors did not appear.  The Plaintiff did appear and proceeded on both its Section 523(a)(6) and 523(a)(2)(A) claims.  The Plaintiff produced two witnesses: Shane Dutka (an experienced landscaper) who testified as to the value of the Collateral at the time of conversion; and Mark Cousineau (the Plaintiff's president) who testified with respect to the subject 2004 loan (the "2004 Loan") and a 2003 loan (the "2003 Loan") from the Plaintiff to R&B.  The Plaintiff also

---

[4]    References herein to the oral record of the Trial appear in the following form: "Oral Record at _____."

introduced documentary evidence into the record.[5]  At the conclusion of the Trial, the court directed

the Plaintiff to file an affidavit with respect to the 2003 Loan and, subject to the foregoing, took the

matter under advisement.  In accordance with the court's direction, on February 1, 2007 the Plaintiff

filed that certain Affidavit of Mark Cousineau (A.P. Doc. I.D. No. 48, the "Affidavit").  This matter

now is ripe for decision.

## II.   **FACTS**

The "Fact" section of the Prior Decision is incorporated herein as if fully set forth.[6]  The

following further relevant facts (set forth immediately below and elsewhere in this opinion) were

developed at the Trial or in the Affidavit.

The 2004 Loan was, to the extent of $14,996.17 of its principal amount, a refinance of the

2003 Loan. (*See* Affidavit ¶ 4 and "Loan Transaction History" annexed thereto.) The stated term of

the 2003 Loan ended on July 1, 2008 and its interest rate was 11.625% per annum.  (*See id.* (Exhibit

A).)   The stated term of the 2004 Loan ended on March 1, 2008 and its interest rate also was

11.625% per annum.  (*See* Exh. B.)  As of the date of the 2004 refinancing, the 2003 Loan was in

default (no payment having been made since October, 2003).   (*See* Affidavit (attached Loan

Transaction History).)

At his July 20, 2006 deposition, Mr. Gilson testified in relevant part as follows:

Q    Did you have an ability to repay the [2004] loan other than through the
business of R&B?
A    No.

---

[5]     References to those documents appear in the following form: "Exh. ___."

[6]     However, the court notes that Mr. Gilson testified at a July 20, 2006 deposition
conducted by the Plaintiff that R&B went out of business in May, 2004 rather than March, 2004.
(*See* Exh. N at 8.)  That difference does not change the result reached herein.

- 4 -

Q    At the time the loan was . . . [refinanced] in February of 2004, were you contemplating the dissolution of the business?

A    Yes, I was.

Q    Why was that?

A    Because I was having financial difficulties already.

Q    What was your financial condition as of 2004?

A    Just some of the equipment had broken and needed repairs.  I didn't have the money for the repairs that were needed for the vehicle.

That was the reason for me reapplying or refinancing the loan, to start to get money to fix the equipment, to get it up and going again.

Q    At the time that loan was made in February of 2004 were you contemplating dissolution of the business?

A    I wasn't contemplating.  I was hoping to make it work but unfortunately it did not.

Q    Because at that time you were experiencing financial difficulties?

A    Right, right.

(Exh. N at 26:5 – 27:6.)  At her deposition of the same date also by the Plaintiff, Mrs. Gilson

testified in relevant part as follows:

Q    Let me show you the Guarantee that's attached to the Complaint in the Adversary Proceedings as Exhibit B.

Turning your attention to the second page of that Guarantee, is that your signature there?

A    Yes, it is.

Q    Likewise, on Exhibit D, the Guarantors' Affidavit, is that your signature there, on the bottom?

A    Yes, it is.

Q    In this Affidavit you make the representation that you're capable of guaranteeing the repayment of the debt and fully performing the obligations associated with the loan and that was as of February 17, 2004.

As of that period of time were you and your husband experiencing financial difficulty?

A    Yes, we were.

Q    Did you have the ability to repay the debt at that time?

A    No.

Q    Did your husband have the ability to repay the debt at that time?

A    No.

(Exh. O at 9:4 – 10:4.)

## III.  ANALYSIS

### A.  Section 523(a)(2)(A)[7]

For the reasons which appear below, it is necessary to deal separately with that portion (the "New Credit Portion") of the 2004 Loan which constituted new credit and that portion (the "Refinance Portion") of the 2004 Loan which constituted a refinance of the 2003 Loan.

### 1.  New Credit Portion

The findings in the Prior Decision that "Mr. Gilson knew that his representations [in the Borrower's Affidavit] regarding R&B's intent and/or ability to repay the . . . [New Credit Portion] were false when made and were made with the intent to induce and deceive the Plaintiff" (Prior Decision at 13) are further supported by his deposition testimony set forth above. A similar finding as to Mr. Gilson and the Guarantors' Affidavit also is supported by that same testimony. A similar finding as to Mrs. Gilson and the Guarantors' Affidavit is supported by her deposition testimony set forth above.

At the Trial, Mr. Cousineau testified that the Plaintiff in fact relied upon the Borrower's Affidavit and the Guarantors' Affidavit. (*See* Oral Record at 10:57:42 – 10:59:04.) Mr. Cousineau also testified at some length about the Plaintiff's underwriting practices in general and with respect to the 2004 Loan in particular, and about the Plaintiff's relationship with R&B and Mr. Gilson. (*See* Oral Record at 10:32:52 – 10:56:00.) Based upon the foregoing, the court finds and/or concludes that the Plaintiff actually and justifiably relied upon the Debtors' misrepresentations. Moreover, the

---

[7]  The legal standards set forth in section IV.C.1 of the Prior Decision are incorporated herein as if fully set forth. The creditor must prove each element of Section 523 (a)(2)(A) non-dischargeability by a preponderance of the evidence. *See Pierce v. Pierce (In re Pierce),* 323 B.R. 21, 27 (Bankr. D. Conn. 2005).

court finds that the Plaintiff was damaged by that reliance to the extent of the New Credit Portion.

The court concludes that all other elements of Section 523(a)(2)(A) have been satisfied with respect

to the New Credit Portion. Accordingly, the court concludes that the New Credit Portion of the Debt

was not discharged as to either Debtor pursuant to Section 523(a)(2)(A).

## 2.    Refinance Portion

As noted above, as of the date of the 2004 refinancing the 2003 Loan was in default.

Therefore, by entering into the 2004 refinancing, the Plaintiff gave up its right to accelerate and

attempt to collect the 2003 Loan. Accordingly, in entering into the 2004 refinancing, the Plaintiff

can be said to have actually and justifiably relied upon the subject representations with respect to the

Refinance Portion. *See* H.R. Rep. No. 95-595, at 549 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963,

6453 (statement of Rep. Edwards).[8]

However, the foregoing does not mean that the "proximate cause" requirement for Section

523(a)(2)(A) nondischargeability necessarily has been satisfied with respect to the Refinance Portion.

In this case, the court is persuaded from the Plaintiff's own proof (*see, e.g.,* the deposition testimony

set forth above) that the 2003 Loan was no more collectible before the refinancing than the

Refinance Portion was afterward (except for the Collateral which is dealt with below). Accordingly,

---

[8]    If the creditor does not forfeit remedies or otherwise rely to his detriment on a false . . . statement with respect to existing credit, then an extension, renewal, or refinancing of such credit is nondischargeable only to the extent of the new money advanced; on the other hand, if an existing loan is in default or the creditor otherwise reasonably relies to his detriment on a false . . . statement with regard to an existing loan, then the entire debt is nondischargeable . . . .

*Id.*

- 7 -

the court finds that the Plaintiff has failed to establish proximate cause with respect to the Refinance Portion.  *See* Susan Elaine Sieger, Mike Vadner & Brian Watkins, *Survey: Fraud as An Impediment to Discharge–Denial of Discharge and Exceptions to Discharge Under the Bankruptcy Code*, 3 J. Bankr. L. & Prac. 469, 542 (1994).[9]  *See also* Theresa J. Pulley Radwan, *No Harm, No Foul: Calculation of Nondischargeable Damages in Transactions Tainted by Fraud,* 58 SMU L. Rev. 1385, 1418 (2005) ("Allowing nondischargeability only for the true harm done to the creditor strikes a balance needed to protect the creditor while still allowing the debtor the fundamental fresh start inherent in a bankruptcy proceeding.").  *Cf. Builders Lumber & Supply Co., Inc. v. Fasulo (In re Fasulo)*, 25 B.R. 583 (Bankr. D. Conn. 1982) (Shiff, J.) (decided prior to 1984 amendment). Therefore, Section 523(a)(2)(A) nondischargeability does not apply to the Refinance Portion.

---

[9]     Several cases, led by a pair of Circuit court decisions, have held that causation is an "all or nothing affair"; that is, so long as the creditor can show that he or she relied on the debtor's fraudulent statements, there is proximately caused damage, seemingly by virtue of the debtor's presence in bankruptcy . . . .

The trouble with so strict a view is that it ignores the congressional insertion of the "to the extent obtained by" language in the 1984 amendment.  This action seems to indicate that Section 523(a)(2) may not have been intended as an all-or-nothing prospect.

*Id.*  (footnotes omitted).

### B.   Section 523(a)(6)[10]

In the Prior Decision the court found that Mr. Gilson had converted the Collateral and held

that the Debt was nondischargeable to the extent of the value of the Collateral at the time of such

conversion (which at that point in these proceedings was unproved).  (*See* Prior Decision at 9-11.)

The court credits Mr. Dutka's testimony at the Trial and concludes that a reasonable finder of fact

could find such value to be $8,500.00.  (*See* Oral Record at 10:22:28 *et seq.* (testimony of Mr.

Dutka).)  Accordingly, the court concludes that the Plaintiff is entitled to judgment determining that

the Debt was not discharged pursuant to Section 523(a)(6) (as to Mr. Gilson only) to the further

extent of $8,500.00.

## IV.   CONCLUSION

For the reasons set forth above, judgment shall issue  as follows:

(a)      as to Mrs. Gilson, the Debt was not discharged pursuant to Section

523(a)(2)(A) to the extent of   $13,003.85[11] plus 46.44%[12] of the interest accrued under the

Agreement; and

(b)      with respect to Mr. Gilson (i) the Debt was not discharged pursuant

to Section 523(a)(2)(A) to the extent of $13,003.85 plus 46.44% of the interest accrued under the

---

[10]      The legal standards set forth in section IV.B.1 of the Prior Decision are incorporated
herein as if fully set forth.  Pursuant to the Clarifying Order, this one issue is subject to the default
judgment standards set forth in the Prior Decision.

[11]      $28,000.00 (the principal amount of the 2004 Loan) minus $14,996.15 (the principal
amount of the Refinance Portion) = $13,003.85 (the principal amount of the New Credit Portion)

[12]      $13,003.85 (the principal amount of the New Credit Portion) divided by $28,000.00
(the principal amount of the 2004 Loan) = 46.44%

Agreement and (ii) the remainder of the Debt was not discharged pursuant to Section 523(a)(6) to

the extent of $8,500.00;[13]

(c)        except to the extent set forth above, the Debt was discharged as to both

Debtors.[14]

Dated: April 25, 2007                                        BY THE COURT

**Lorraine Murphy Weil**
**United States Bankruptcy Judge**

---

[13]        The court deems it appropriate to apply Section 523(a)(6) nondischargeability to the
Refinance Portion.

[14]        The Plaintiff's request for an award of statutory costs will be granted.  The Plaintiff
shall file and serve on the Debtors an itemized application for statutory costs on or before May 11,
2007.  Objections to such application, if any, must be filed on or before May 21, 2007.